BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**GREGORY R. NYHUS, OSB #913841**
Assistant United States Attorney
greg.r.nyhus@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:16-CR-00105-AA |
| v. | **GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION TO CONTINUE TRIAL DATE AND PERMIT FOREIGN TRAVEL** |
| **ROBERT EVANS MAHLER,** | |
| Defendant. | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, through Gregory R. Nyhus, Assistant United States Attorney (AUSA) for the District of Oregon, provides this response to defendant's motions seeking to extend the trial date and to permit defendant to engage in foreign travel.

I.  PROCEDURAL BACKGROUND

On February 16, 2016, a complaint and accompanying arrest warrant were issued by Magistrate Janice Stewart.  CR 1.  The complaint alleged defendant's illegal possession of firearms and was supported by an affidavit which stated that defendant had stored a number of weapons in locked containers in the garage of a family member's residence.  A search warrant

had also been issued authorizing the search of defendant's home for weapons, ammunition. The evidence will establish that defendant had possession or control over 41 firearms and thousands of rounds of ammunition. Defendant was released on conditions following his arraignment on February 17, 2016. CR 7,8.

An indictment was issued on March 8, 2016, alleging a single count of Felon in Possession of a Firearm. CR 10. The indictment also alleged that defendant had been previously convicted of two federal felonies involving firearms for False Statement in Acquisition of a Firearm (June 29, 1994, District of Oregon Case No. CR 92-175-1-JO) and Illegally Exporting a Defense Article (June 23, 1995, District of Oregon Case No. CR 95-22-01-HA).

Defendant was arraigned on the Indictment on March 16, 2016. CR 16. Shortly thereafter, defendant filed his first request for a continuance which was unopposed and granted on April 27, 2016. CR 18, 21. The order excluded 100 days under the Speedy Trial Act and trial was set for August 16, 2016.

On July 18, 2016, an order was entered scheduling a telephone conference in anticipation of trial in the matter. CR 23. During the conference on the next day, however, trial was reset for a second time to November 14, 2016, and a complete motions calendar was given to the parties which governed due dates for motions and trial memoranda and other filings. CR 24.

On October 5, 2016, a Superseding Indictment was filed, adding a single firearm to the list of guns alleged to have been illegally possessed by defendant. CR 26. No other substantive changes were made. The next day, defendant filed a Motion to Substitute Attorney, and current counsel of record was entered as counsel of record. CR 29, 34. A third motion to continue was also granted, resetting trial to February 28, 2017. CR 34.

On January 12, 2017, the government requested a status conference ostensibly to establish dates in advance of the approaching trial. CR 35. A status conference was held telephonically on January 24, 2017, at which time government counsel informed the Court that a jury trial was desired and that negotiations had not proved fruitful. Defendant expressed a desire to travel internationally to have shoulder surgery performed and wanted time to complete the surgery and rehabilitation prior to trial. The Court directed counsel to confer on calendar dates for a trial. Another status conference was set for February 13, 2016. CR 36.

In the interim, defendant filed a Motion for Continuance of Trial Date and to Allow Foreign Travel for Medical Procedures and accompanying declarations. CR. 39-43. The government now files the instant objection.

## II.     OBJECTION TO MOTION TO CONTINUE

This is the fourth motion to continue this matter. While this is only the second under current counsel, the amount of time allowed as excludable delay has been at least 90 days per reset. The matter is aging, quickly advancing to a year old. As the Court is aware from the status conference on July 19, 2016, the parties engaged in significant effort to resolve the matter short of trial. As the new date approached, and based on the statements of defense counsel and the Court, the government began its preparation in earnest, scheduling witnesses, issuing subpoenas and arranging for their travel. When current counsel was made attorney of record in October, he understandably needed additional time to review the case and reengage in negotiations. A continuance was justifiable.

Following the status conference on January 24, 2017, government counsel immediately called defense counsel to discuss trial dates. The calendar counsel agreed to present and

recommend to the Court a new trial date of April 25, 2017, trial documents due April 18, 2017 and any pretrial motions simultaneously filed on April 11, 2017.

Defense counsel now seeks what amounts to an additional 180-day continuance, or 90 days more than originally represented, so that his client can have shoulder surgery. Defendant makes only passing reference for a need to continue to investigate the matter. The April 2017 trial setting, however, will have allowed defense counsel more than 6 months to prepare and investigate the matter.

As a threshold matter, the government has an interest in a speedy trial. Under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(B), the decision to grant or deny a continuance lies within the sound discretion of the district court. If appealed, the Ninth Circuit employs a four-factor test to analyze whether the trial judge abused his or her discretion in denying a defendant's request for more time. "The relevant factors are: 1) the extent of the defendant's diligence in readying the defense; 2) the likelihood the continuance would have satisfied defendant's need; 3) the inconvenience to the court, opposing party and witnesses; and 4) the extent to which the defendant may have been harmed." *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir. 1989) (upholding denial of a continuance when defense attorney had 82 days to prepare for trial, and where the government planned to call over 70 witnesses); *see also United States v. Woodman*, 1992 U.S. App. LEXIS 33437, 7 (9th Cir. 1992)(there was no abuse of discretion in denying defendant's motion to continue given that defendant had eighteen months from indictment until trial to prepare his defense).

With respect to the first factor – diligence – defendant blithely asserts that he needs additional time to complete his investigation. The government's discovery was delivered to defense counsel between March and July of 2016 with the bulk witness statements, filings,

**Government's Response to Motion to Continue, Foreign Travel, 3:16-CR-00105,** *Mahler*     **Page 4**

reports of interviews, photographs and other material provided early on.  Presumably, these materials were made available to defendant, and he has had access to them even though he has changed counsel.  To date, defendant has provided, as reciprocal discovery, emails containing photos of defendant's phone and text messages.  Defendant has failed to articulate a specific need to continue investigation into reports and discovery provided more than nine months ago.  Current Counsel has had discovery at least since mid-October, 2016.

The second factor evaluates whether a continuance would satisfy the stated need for more time.  If past performance is any indication of future outcomes, it would appear that the defense is no closer to being ready for this trial now than when new trial counsel was appointed and again has not given any indication of what investigation is still needed.

On the third factor, inconvenience, this case is beyond the point where the delay can fairly be classified as merely "inconvenient."  We have reached the point when the government risks being denied a fair trial.  Government witnesses include a number of civilians who have been asked twice to clear their schedules, receive subpoenas and be available to appear for testimony.  Asking civilian witnesses, whose inconvenience is of a different magnitude than that of government witness, to wait while defendant undergoes shoulder surgery is contrary to the stated principles of the Speedy Trial Act itself.

The Ninth Circuit has recognized that the public has an interest in a speedy trial, and the government has an interest in resolving the case prior to the inevitable point when memories fade.  *See United States v. Lewis*, 611 F.3d 1172, 1176 (9th Cir. 2010), citing *United States v. Lloyd*, 125 F.3d 1263, 1268 (9th Cir. 1997) ("Congress designed the Speedy Trial Act in part to protect the public's interest in the speedy administration of justice").

On the fourth factor, the appeals court would consider the extent to which the defendant may have been harmed by the district court denying the requested continuance.  Continuing the trial dates simply to allow defendant to undergo elective surgery, however, is not a sufficient basis to exclude time under the Speedy Trial Act.  See, 18 U.S.C. § 3161(h).  Defendant has had ample time to consider his elective surgery (material submitted by defendant indicates that his X-rays were taken in October 2014).  Denying defendant his opportunity to have an elective surgery *now*, while facing trial on what would be his third federal conviction for weapons-related offenses is not a balance contemplated by the Speedy Trial Act.

### III.    GOVERNMENT'S OBECTION TO FOREIGN TRAVEL

The gravamen of defendant's motion to continue is his desire to travel to India for what is admittedly elective surgery on his shoulder.  Emails presented with defendant's declaration indicate that although this issue has been chronic, efforts to locate a surgeon for treatment did not begin until nearly seven months after he was indicted and just weeks after defendant's third continuance.  The shoulder issue appears in the pleadings for the first time in counsel's most recent motion in spite of defendant's chronic pain and need for replacement.

Defendant's ability to travel to India is also in question.  The ATF is in possession of defendant's passport, as it was seized in evidence during the execution of the search warrant for defendant's home.  It expires in less than six months.  The government understands that, in some cases, countries may not issue a visa to travelers whose passports are so close to expiration.  Nor has defendant shown that he would be an individual permitted to enter India, given his criminal history and the fact that he is facing indictment again.   None of the issues

What is also missing from defendant's filings is a medical diagnosis.  Nowhere in defendant's declaration are there facts or documentation providing any indication that he has

been evaluated for this type of surgery, that he is in fact in need of the surgery or that it is appropriate for him. Defendant's offer of emails with questions and answers between an unknown in India, which merely schedule a tentative procedure, do not help. Nor do three-year-old black and white copies of copies of an x-ray provide proof that defendant is a candidate for the surgery he hopes to have. Even if the surgery is an important elective, defendant has shown no evidence to substantiate a claim that travel abroad is necessary and that surgery is not otherwise available here.

Finally, the Court should consider defendant's likelihood of flight. Defendant is an aging defendant who has engaged in weapons violations in the past. If convicted, defendant faces substantial jail time – the advisory guidelines indicate nearly 40 months - in light of the number of weapons the government contends were under his control. Clearly, there is more than ample motivation to avail himself of the dense population of India and evade prosecution.

Perhaps most disturbing is the fact that defendant has engaged in passport fraud during his prior flight from prosecution – for almost two years in an attempt to flee before. On May 13, 1992, following a lengthy investigation by federal authorities, defendant was indicted on several federal crimes related improperly exporting guns to South Africa and an arrest warrant was issued. When defendant was finally apprehended, the government learned that his United States Passport had expired and he had been traveling and returned to the United States on a fraudulent South African passport. According to the investigative report, provided in discovery to defendant, and attached and incorporated as Exhibit A, defendant knew of the warrant for his arrest.

///

///

**Government's Response to Motion to Continue, Foreign Travel, 3:16-CR-00105, *Mahler*     Page 7**

## IV.     CONCLUSION

For the foregoing reasons, defendant's request to delay trial until June 2017 should be denied and appropriate dates should be developed to support a trial in April, 2017.  Further, defendant's request to travel to India for elective shoulder should be denied as defendant represents a significant flight risk.

Dated this 10th day of February 2017.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Gregory R. Nyhus*
GREGORY R. NYHUS OSB #913841
Assistant United States Attorney