**Ernest Warren, Jr., OSB #891384**
E-Mail: e.warren@warrenpdxlaw.com
Warren & Sugarman
838 SW First Avenue, Suite 500
Portland, Oregon   97204
Tel: (503) 228-6655
Fax: (503) 228-7019

**Attorney for Defendant Robert Evans Mahler**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT EVANS MAHLER,<br><br>Defendant. | No. 3:16-CR-00105-AA-1<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE |

I.   PRELIMINARY STATEMENT.

This case arises from an Indictment charging Robert Evans Mahler ("defendant") with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1). Special Agent Amanda Johnson of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") interviewed numerous witnesses and gathered evidence leading to the Indictment of the defendant. Unfortunately, many of the statements of witnesses and evidence gathered violate the Federal Rules of Evidence ("FRE") and cases that require fundamental fairness during the course of the

trial. Accordingly, the defense moves this Court to limit statements and evidence that violate FRE, statutes, and case law.

II.    LEGAL ARGUMENTS.

　A.    Witness Statements.

　　1.    Internet Search-Article That Defendant Went to Prison.

Special Agent Johnson wrote:

> Connie said she conducted an internet search of MAHLER's name and the title of his book and she found an article that said MAHLER had done prison time for firearms trafficking. Connie stated that aside from finding that article, she did not know of MAHLER's criminal history. Due to his potential criminal history, Connie said she did not feel comfortable giving MAHLER his firearms back. During the conversation with SA Johnson, Connie stated she thought MAHLER was a convicted felon.

MAHLER at 000021, ¶3.

Special Agent Johnson also wrote, "Connie clarified that she discovered the article about MAHLER's criminal history in August or September of 2015." MAHLER at 0000022, ¶12.

The defendant objects to Special Agent Johnson and Mrs. Daggett testifying about seeing an article on the internet that said, "…Mahler had gone to prison…" because it lacks foundation- FRE 104, it is prejudicial- FRE 403, and is hearsay not subject to any exception – FRE 802.

With regard to FRE 104, the government cannot authenticate the internet site or article through Mrs. Daggett because she did not offer the source of her statement. Also, FRE 901 is a condition precedent to admissibility, and Mrs. Daggett is inadequate to authenticate her statement pursuant to FRE 901.

Additionally, if proper foundation and authentication for the internet article were made, the evidence violates FRE 403 because it is prejudicial to say, "Mahler went to prison for firearms trafficking" in this case where he is charged with being a felon in possession of firearms. In *Old*

Page 2 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE

*Chief v. United States*, 519 U.S. 172, 180-192(1997), the Supreme Court of the United States held that when a defendant's prior conviction is offered for the purpose of showing the defendant's status as a felon and the defendant offers to stipulate to that issue, the conviction should be deemed inadmissible pursuant to FRE 403 because the introduction of the conviction itself becomes more unduly prejudicial than probative and is likely to confuse the issues for the jury. *See, also, United States v. Bejar-Matrecios,* 618 F.2d 81, 84 (9th Cir. 1980) (trial court erred by admitting evidence of prior conviction because it was unfairly prejudicial); *United States v. Coades*, 549 F.2d 1303, 1306 (9th Cir 1977) (trial court erred by admitting prior convictions for similar offense allegedly to show intent).

Furthermore, the statement violates FRE 802 because it is hearsay not subject to an exception. In *Colvin v. United States,* 479 F.2d 998, 999-1003 (9th Cir. 1973), the Ninth Circuit held the trial court should have excluded out of the court third party statements that were party of a police report because the third party statements were hearsay.

In this case, Special Agent Johnson's "police report" states that Mrs. Daggett's internet search reveals an article that the defendant went to prison for firearms trafficking. The government cannot properly authenticate "third party statements." The statements are prejudicial to defendant because he is presently accused of being a felon in possession of a firearm. Furthermore, the internet source of the article is "third party hearsay" not subject to hearsay exception. Accordingly, the statement should be excluded.

For the record, it should be noted that defendant will stipulate to his convictions that are stated in the Indictment, so they may not come into evidence.

2. Defendant Wanted To Retrieve Firearms Stored at Mrs. Daggett's Residence.

Special Agent Johnson wrote:

>SA Johnson asked Connie about the number of firearms Connie is storing for MAHLER and Connie stated there were several firearms. Connie estimated that she was storing approximately 50 firearms for MAHLER. Connie said MAHLER wanted to retrieve his items from her house but that she last spoke to him on Saturday, January 16, 2016 and told him she was having some family problems and that she would tell MAHLER when he could come pick up his things.
>
>MAHLER at 0000021-22, ¶4.

The defendant objects to Special Agent Johnson and Mrs. Daggett testifying about defendant wanting to "retrieve his items" because it is unduly prejudicial and suggestive that he intended to unlawfully possess the firearms in violation of FRE 403, and the statements is also hearsay not subject to an exception in violation of FRE 802. Additionally, defendant relies upon arguments stated in Section II.A.1. herein to support exclusion here. Accordingly, these statements should be excluded.

3. Defendant's Veteran Status, Prior "Gun Shop" Owner, and "Anti-government" Characteristics.

Special Agent Johnson wrote, "Connie said MAHLER is a Vietnam veteran and also used to own a gun shop in Salem approximately 15-20 years ago, or more. Connie described MAHLER as "anti-government" and a survivalist type." MAHLER at 0000022, ¶5.

The defendant objects to Special Agent Johnson and Mrs. Daggett testifying regarding defendant's veteran status, "gun shop" ownership, and "anti-government" sentiment, if any, because they violate FRE 402- irrelevant, FRE 403- inflammatory, FRE 404(a)- improper character evidence, and FRE 802- hearsay not subject to an exception.

FRE 402 states in part:

>Irrelevant evidence is not admissible.

In *United States v. Komisaruk*, 885 F.2d 490, 492-495 (9th Cir. 1989), the Ninth Circuit affirmed a trial court's exclusion of evidence regarding the defendant's religious and political beliefs because the beliefs would not provide a viable defense to the charged offenses.

If the Court finds relevancy, then the Court should exclude these statements because it violates FRE 403 by being unduly prejudicial and confusing issues in the case. In *United States v. Brooke*, 4 F.3d 1480, 1482-1488 (9th Cir. 1993), the Ninth Circuit held that a trial court improperly allowed a prosecutor to introduce evidence that the defendant lied about having cancer because the evidence had limited probative value but was high prejudicial and inflammatory to the issue that she declared her cosmetic breast surgery as a tax deduction. Moreover, in *United States v. Bland*, 908 F. 2d 471, 473 (9th Cir. 1990), the Ninth Circuit held that a trial court abused its discretion by allowing the jury to hear evidence of the facts supporting the defendant's arrest warrant because the facts were highly inflammatory, and so prejudicial that a limiting instruction could not cure the error.

This is also improper character evidence. FRE 404(a)(1) prohibits evidence of a person's character trait to prove that person acted in accordance with the character or trait. The exceptions to FRE 404 do not apply here either.

In *Wilson v. United States*, 250 F. 2d 312, 325-326 (9th Cir. 1957), the Ninth Circuit held that evidence reflecting on the defendant's state of mind during a period of time after the offense at issue was properly excluded. Furthermore, in *Wolcher v. United States*, 200 F. 2d 493, 497-498 (9th Cir. 1953) the Ninth Circuit held that evidence of other offenses may not be admitted to show a general disposition to commit the charged offense.

Furthermore, the statements violates FRE 802 because they are hearsay not subject to an exception. The statements cannot be authenticated under FRE 901 either.

**Page 5 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE**

In this case, hearsay statements about the defendant's veteran status, former gun shop owner, and being "anti-government" is not relevant, is extremely inflammatory and improper character evidence. Accordingly, these statements should be excluded.

4. Witness Speculation.

Special Agent Johnson wrote:

> SA Johnson asked Connie if MAHLER is aware that Connie knows about his firearms on her property. Connie stated she believes MAHLER is aware that Connie knows about his firearms. Connie stated she does not thing that MAHLER is aware that she knows he is a felon. Connie reiterated that she believes there are approximately 50 firearms being stored on her property.
>
> MAHLER at 0000023, ¶15.

The defendant objects to these statements. Defendant incorporates by reference Section II.A.1, 2, and 3 herein.

FRE 602 only allows a witness to testify when evidence is sufficient to support a finding that a witness has personal knowledge of the matter. Mrs. Daggett "believes" the defendant is aware of her knowledge strikes of speculation. Accordingly, these statements should be excluded.

5. The "storage" Agreement.

Special Agent Johnson wrote:

> SA Johnson asked Connie if she has any agreement MAHLER that allows him access to her property as he pleases. Connie said she does not have any agreement with MAHLER to come and go as he pleases. SA Johnson asked Connie if MAHLER is paying her to store his items on her property. Connie stated that was the original agreement but that she has never received any payment for the storage of MAHLER's personal belongings.

MAHLER at 0000023, ¶16[1]

---

1. William Daggett made a similar statement at MAHLER 0000025, ¶11, and defendant objects to it.

Page 6 **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE**

The defendant objects and incorporates by reference Section II.A.1, 2, and 3. The admissibility of an agreement must be determined under Oregon law.

ORS 41.580(1)(a) requires any agreement that by its terms is not to be performed within a year from the making must be in writing. ORS 41.580(1)(e) requires leases for more than a year to be in writing too.

Any testimony regarding an agreement between the Daggetts' and the defendant to store property at the Daggetts' property should be excluded because the agreement was not reduced to writing as required by the Oregon Statute of Frauds. Without a written agreement, there is no way to refute the terms of the agreement, and this is prejudicial to the defendant because he cannot confront the Daggetts' portrayal of what was the terms of agreement between the parties, or that an agreement ever existed.

Defendant incorporates by reference section II. A.1, 2, 3, and 4. Accordingly, the oral agreement should be excluded.

6. Speculation As To Type Of Firearm.

> Special Agent Johnson wrote:
>
> Bill Daggett thought that some of the firearms in MAHLER's safe were of an AR-style. Bill said he thought MAHLER had previously stored his firearms at "Kyle's" residence.
>
> MAHLER at 0000024, ¶3.

The defendant objects to these statements. Defendant incorporates by reference Section II.A.1, 2, 3, and 4 herein.

These statements about what Mr. Daggett "thought" should be excluded because Mr. Daggett lacks personal knowledge as to the truth of the assertion. The "thought" that some firearms

Page 7 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE

were "AR-style" is also inflammatory. Finally, Mr. Daggett "thought MAHLER had previously stored his firearms at "Kyle's residence…" is also hearsay without an exception.

    7. Mrs. Daggett's Further Hearsay.

Special Agent Johnson wrote:

> Connie states once she found MAHLER was a felon, she spoke to her brother (Bureau of Land Management Special Agent Adam Sully) and sister in law, "Cara" (SA Sully's wife) about it. Connie said her sister-in-law told her she could not give MAHLER his safe and firearms back to him if he is a felon.

MAHLER at 0000025, ¶8.

The defendant objects to these statements. Defendant incorporates by reference Section II.A.1, 2, 3, and 4 herein. Accordingly, these statements should be excluded as hearsay without exception.

    8. Speculation By Mr. Daggett.

Special Agent Johnson wrote:

> Bill said he believed his act of returning the food products to MAHLER made MAHLER angry.

MAHLER at 0000025, ¶9.

The defendant objects to this statement because it is prejudicial, improper character evidence, lacks personal knowledge as to whether the defendant was made "angry" by Mr. Daggett's act of returning food, and hearsay without exception. Defendant incorporates by reference Section II.A.1, 2, 3, and 4 herein.

    9. Shooting Competitively.

Special Agent Johnson wrote:

> Connie stated MAHLER used to shoot competitively and that he would talk about the firearms he used for this purpose. Connie said these conversations

took place early on in their relationship with MAHLER. Bill and Connie said MAHLER would go shoot with "Kyle" and "Curt" from "Curt's Barber Shop." Bill said MAHLER would always make someone else buy ammunition when he would go shooting. Bill say "Kyle" would buy ammunition when he went shooting with MAHLER.

MAHLER at 0000025, ¶12.[2]

Defendant objects to these statements because they lack personal knowledge and are also hearsay without exception. Defendant incorporates by reference Section II.A.1, 2, 3, and 4 herein. Accordingly, these statements should be excluded.

    10. Mrs. Daggett's Impression Of Defendant's Jokes And Unrelated Activities.

Special Agent Johnson wrote:

Connie stated MAHLER has jokingly talked about "making people disappear." Connie said MAHLER acts nice but is a different person when he gets mad. Connie described MAHLER as a "master manipulator" and "vindictive." Connie said she learned from her sister-in-law, "Cara," that MAHLER has previously slashed people's tires. According to Connie, "Cara" said her whole family is on the same page and against MAHLER.

Connie also described a situation where MAHLER, who is head of a table tennis club in Silverton, removed tables used for table tennis from a specific location and placed them at "Kyle's" residence. Connie said MAHLER knew a rival in the table tennis community had access to the location where the tables were being stored and, after MAHLER moved them, MAHLER sued his rival for stealing the tables.

Throughout SAs Johnson's and Enk's conversation with Bill and Connie, Bill continuously expressed concern about possible future interactions with MAHLER and stated he is scared of MAHLER and who MAHLER might know.

MAHLER at 0000027, ¶¶22, 23, and 24.

---

2. In fact Mrs. Daggett explained shooting competitively was not something defendant was presently doing. MAHLER0000038, ¶5.

Case 3:16-cr-00105-AN    Document 89    Filed 12/07/17    Page 10 of 19

The defendant objects because these statements are irrelevant, inflammatory, improper character evidence, lack personal knowledge, and are hearsay without an exception. Defendant incorporates by reference Section II.A.1, 2, 3, and 4 herein. Accordingly, these statements should be excluded.

11. Chase Cashier's Check And J&G Sales Receipt.

Attached, as Defendant's Exhibits 101 and 102 are Chase cashier's Receipt and J&G Sales receipt. Defendant objects to these records because they lack foundation to prove these documents are associated with defendant on their face, they are inflammatory to allow them into evidence, and they are hearsay without exception because they lack trustworthiness due to the motivation and involvement of the Daggett's in this case.

The note to Paragraph (6) of Federal Rule of Evidence 803 state in relevant part:

> Problems of motivation of the informant have been a source of difficulty and disagreement.
> 
> \*     \*     \*     \*
> 
> The decisions hinge on motivation and which party is entitled to be concerned about it.
> 
> \*     \*     \*     \*
> 
> Consequently, the rule proceeds from the base that the records made in the course of a regularly conducted activity will be taken as admissible but subject to authority to exclude if "the sources of information or other circumstances indicate lack of trustworthiness."

In this case, the "motivation" of the Daggett's is to assist the government in prosecuting the defendant, but the business records only state that Bill Daggett was the one that transacted business, not the defendant. The only nexus to implicate the defendant into the transaction is the Daggett's, and that testimony requires hearsay not subject to an exception. Accordingly, the Chase Cashier's Check and the J&G Sales receipts should be excluded because the records name Bill

Page 10 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE

Daggett as the party to the transaction and hearsay testimony from the Daggetts to implicate the defendant in this transaction is needed to connect the defendant to these transactions, and that lacks trustworthiness.

12. Defendant's Alleged Handwritten Notes.

Attached as Defendant's Exhibit 103 is a handwritten document alleged to be defendant's handwritten notes. Defendant objects on the grounds of foundation and pursuant to FRE 104(a), (b), and (c) that the admissibility of this exhibit be made outside the presence of the jury. Additionally, defendant objects that this is unduly prejudicial, inflammatory, and possibly cumulative, hearsay without exception, and cannot be authenticated. Accordingly, the document should be excluded.

13. Shooting with Kyle.

> Special Agent Johnson wrote:
>
> Within the last ten years, Connie said she was told by her sister-in law, "Cara," MAHLER's stepdaughter, MAHLER would go shooting with "Kyle" (Kyle Yates DOB: 1978) and "Steven" (Steven Yates DOB: 1972), "Cara's" brothers, and "Curt" from "Curt's Barber Shop." Connie said "Cara" also told her that "Kyle" had been angry with MAHLER when "Kyle" was storing MAHLER's property at his house.
>
> MAHLER at 0000038, ¶6.

Defendant objects because the statements are inflammatory, and hearsay without exception. Defendant incorporates by reference Section II.A.1, 2, 3, and 4 herein. Accordingly, these statements should be excluded.

14. Statements Of Special Agent Adam Sully.

> Special Agent Johnson wrote:
>
> BLM SA Sully said he Googled MAHLER several years ago after MAHLER asked BLM SA Sully to do some firearms training with him.

> [Agent note: Based on a previous conversation with BLM SA Sully, BLM SA Sully said he discovered MAHLER was a felon based on his internet search.] BLM SA Sully stated at that time he contacted the ATF Portland Office and left an anonymous tip about MAHLER's possession of firearms. BLM SA Sully said at the time he left that tip, he had not specifically seen MAHLER with firearms,
>
> BLM SA Sully also said he sent an anonymous letter to the Nation Rifle Association (NRA) about MAHLER's criminal history. BLM SA Sully said he provided the information he found on the internet within his letter. BLM SA Sully said he thought he sent the letter to the Firearms Instructor Records division of the NRA. [Agent note: Based on a previous conversation with BLM SA Sully, BLM SA Sully said Mahler was a firearms trainer for the NRA].
>
> SA Johnson asked BLM SA Sully if he knew if Kyle Yates (DOB: 1978) had purchased firearms for MAHLER. BLM SA Sully stated he did not know if Kyle had purchased any firearms for MAHLER. BLM SA Sully said Kyle told him a couple weeks ago that "Curtis" purchased a firearm from MAHLER. BLM SA Sully said "Curtis" lives in Silverton.
>
> MAHLER at 000039, ¶¶2, 3, &4.

Defendant objects because these statements are inflammatory, prohibited character evidence, lack foundation, lack personal knowledge, are hearsay without an exception, and cannot be authenticated. Defendant incorporates by reference Sections II. A.1, 2, 3, and 4. Accordingly, these statements should be excluded.

    15. Statements Of Curtis Allen, Jr.

> Special Agent Johnson wrote:
>
> On March 25, 2016, SA Schodowski and SA Johnson made contact with Curtis Allen Jr. (DOB: 1978) at his barbershop located at 306 N. 1st Street Silverton, Oregon 97381. SA Schodowski and SA Johnson identified themselves as ATF Special Agents and advised Allen that they wanted to speak to him regarding an individual that the SA's believed Allen knew. Allen had customers at the barbershop so SA Johnson provided Allen her business card and requested that Allen contact her to set up an appointment to talk.

On March 28, 2016, ATF Schodowski and SA Enk interviewed Allen at his residence located at Silverton, Oregon 97381. SA Schodowski showed Allen a Department of Motor Vehicles (DMV) photograph of MAHLER, and asked if could identify the individual. Immediately, Allen stated the photograph was of "Bob Mahler." Allen then stated that all weekend he wondered who the ATF would want to speak to him about and the one person he should think of was Bob Mahler.

Allen described MAHLER as a "bullshit artist." Allen stated that he knew that there was "something off" about MAHLER. Allen stated that MAHLER made him nervous. Allen stated that he knew that MAHLER used to be a firearms dealer and that he had gotten into trouble, but Allen stated that he did not know what it was about.

Allen stated that he met MAHLER through MAHLER's stepson Kyle Yates. Allen advised that he has known Kyle Yates for many years and added that he has known Kyle Yates's wife since the fourth grade. Allen stated that Kyle Yate's mother Kristine Yates married MAHLER. Allen stated that Kyle Yates would bring Allen to the senior center in Salem to play table tennis with MAHLER. Allen stated that Kyle Yates wanted to get to know MAHLER better since MAHLER was not married to his mother.

Allen stated that he frequently would hang out with MAHLER and Kyle Yates playing table tennis. Allen stated that soon after meeting MAHLER, MAHLER began talking about firearms and would brag that he was a good shot with a firearm. Allen stated that several years ago when he lived on Powers Creek Loop Road in Silverton, he had MAHLER and Kyle Yates to his property to shoot. Allen stated that he observed MAHLER shoot a firearm that he brought with him. Allen stated that the firearm was a "Colt stainless 1911." Allen stated that he shot the Colt better than MAHLER did and added that MAHLER was a bad shot.

Allen stated that he sold a Thompson Auto Ordinance 1911 .45 caliber pistol to MAHLER a few years ago. Allen stated that MAHLER paid cash for the firearm and that MAHLER provided him with a bill of sale. Allen stated that what stood out as odd to him about the transaction was the MAHLER did not put MAHLER's name of the bill of sale rather MAHLER put "Tom Mahler" as the purchaser of the firearm. Allen stated that MAHLER told him that MAHLER was getting the gun for his brother which is why he put a different name on the bill of sale. SA Schodowski asked Allen if he still had the bill of sale of MAHLER. Allen stated that he would check. Allen was able to retrieve the bill of sale and provided it to SA Schodowski. The bill of sale showed the name "Alex Mahler." Allen stated that he was mistaken by stating, "Thomas Mahler." SA Schodowski required to take the document as evidence. Allen agree. SA Schodowski placed the document

Page 13 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION IN LIMINE

in evidence as ATF Evidence # 175. A copy is attached as Attachment-1. Allen stated that the sale of the firearm occurred at MAHLER's residence.

Allen stated that he originally purchased the Auto Ordinance firearm from Dan's Pawnshop located in Keizer, Oregon. Allen stated that he knew that the shop was located near Appleblossom and Plymouth in Keizer. Allen stated that he did not know when he purchased the Auto Ordinance firearm, but stated that he thinks he also bought a few other firearms at the same time. Allen stated that he sold the Auto Ordinance to MAHLER a short time after purchasing it because he did not like the firearm.

Allen stated that he purchased a Winchester 30-30 rifle from MAHLER several years ago. Allen stated that there was no bill of sale for this transaction. Allen stated that he purchased the firearm at MAHLER's residence. Allen stated that he sold the Winchester 30-30 rifle along with a lot of his other belongings in order to purchase the current house he was living at. Allen stated that he does not remember whom he sold the firearm to.

Allen stated that he saw a shipping container at MAHLER's residence that contained "police gear, bullet proof jackets, and AR's."

Allen advised that he had a friend named Brandon who had a falling out with MAHLER. Allen stated that he brought Brandon over to MAHLER's residence in order for them to work things out. Allen stated that MAHLER became very angry that Allen brought Brandon to his home and told them to leave. Allen stated that sometime after his occurred. MAHLER went to Allen's barbershop and confronted Allen about bringing Brandon to his residence. Allen stated that MAHLER made the following threat to him: "I'd hate for something to happen to you where you would not be able to take care of your family." Allen stated that he became extremely upset with MAHLER and threw him out of the barbershop. Allen stated that he called Kyle Yates and told him what MAHLER said. Allen stated that approximately 20 minutes later, MAHLER showed up to the barbershop with a small white envelope and tried to hand it to Allen. Allen stated that he refused to take the envelope from MAHLER and told him to leave. Allen stated that he assumed it was money to buy him off to keep him quiet about the threat from MAHLER. Allen stated that he did not touch the envelope and that MAHLER left with it. Allen described the envelope as small letter size envelope.

Allen advised that the events that he spoke to SA Schodowski and SA Enk about during the interview occurred several years ago, but he was unsure when and guess that it was approximately 5 years ago. Allen stated that he now knows that MAHLER is a convicted felon which he found out only

Page 14 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE

recently through Kyle Yates. Allen stated he was unaware of MAHLER's felon status during both firearm transactions.

MAHLER at 0000587-0000589, ¶¶ 1-12.

Defendant objects to these statements because they lack foundation, they are inflammatory, lack personal knowledge, and are hearsay without an exception. Defendant incorporates by reference Section II.A.1, 2, 3, and 4 herein. Accordingly, these statements should be excluded.

III. CONCLUSION.

For the reasons stated above and in the interest of justice, the defendant moves for relief as stated above and any other relief this Court may deem appropriate.

RESPECTFULLY SUBMITTED this 7 day of December, 2017.

/s/ Ernest Warren, Jr.
Ernest Warren, Jr.
Attorney for Defendant

Exhibit 101

MAHLER_0000028



### Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

---

FOR YOUR PROTECTION SAVE THIS COPY  
**CASHIER'S CHECK**

**Customer Copy**

1024205477

03/03/2014

Void after 7 years

**Remitter:** WILLIAM DAGGETT

$** 5,247.24 **

**Pay To The Order Of:** J & G SALES

Memo: _____

Note: For information only. Comment has no effect on bank's payment.

Drawer: **JPMORGAN CHASE BANK, N.A.**

**NON NEGOTIABLE**



**J&G SALES, LTD.**
440 Miller Valley Road
Prescott, Arizona

Invoice
SHIPPING

Page 1 of 1
INVOICE NUMBER: 1133978-IN
INVOICE DATE: 03/05/2014

FRT ADDS
.02¢ per rd.

ORDER NUMBER: 0559863
ORDER DATE: 03/05/2014
SALESPERSON: M
CUSTOMER NO: ZDAGGEB

FFL #: -----   FFL Exp Date:

DAGGETT, BILL
381 MONITOR ROAD
SILVERTON, OR  97381

SHIP TO:
DAGGETT, BILL
381 MONITOR ROAD
SILVERTON, OR  97381

CONFIRM TO:
MAIL/LID

Tax Schedule: OOS
Exemption No:

| CUSTOMER P.O. | SHIP VIA | F.O.B. | TERMS | |
|---|---|---|---|---|
| | FEDEX GROUND | 11 | MO/CC | 0000000012 |

| ITEM NO. | UNIT | ORDERED | SHIPPED | BACKORD | PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 5001038 762X39 RSN WOLF HP 1M/CS BI-ME | EACH | 4,000 | 4,000 | 0 | 0.2399 | 959.60 |
| 5001784 Box/C 762X54R COM 148GR FMJ CO/BE, 4 CUSTOMER KNOWS THIS AMMO IS CORROSIVE | EACH | 880 | 880 | 0 | 0.2045 | 179.96 |
| 5001752 45ACP RSN TULAMMO 230GR FMJ NC | EACH | 3,000 | 3,000 | 0 | 0.3199 | 959.70 |
| 5001737 223 RSN TULAMMO 55GR FMJ NC/BO | RND | 6,000 | 6,000 | 0 | 0.2699 | 1,619.40 |
| 5001326 545X39 RSN 53GR FMJBT CO/BE, O | RND | 4,320 | 4,320 | 0 | 0.1570 | 678.24 |
| 5001951 308 COLT 168GR FMJ BT 20RD BOX | EACH | 800 2660 → 33 boxes | 800 | 0 | 0.5999 | 479.92 |

RES ASR  LIST STATEMENT DOB 03-07-1961

CHECK  App: YAUTO CHECK APPROVED                                      -5247.24
-5247.24

Alt ID/DLN: DAGGETT, BILL

Check No: 000000001

Net Invoice:  4,876.82
Less Discount:  0.00
Freight:  370.42
Sales Tax:  0.00
Invoice Total:  5,247.24
Amt. Received:  5,247.24
Balance Due:  0.00

We offer a 30 day inspection period. After 30 days all sales are final. If merchandise needs to be returned within the 30 day inspection period, please call for a return authorization number, or processing of your return may be delayed. All returned merchandise must be in original condition and packaging and accompanied by invoice. A restocking fee may apply. Customer pays shipping both ways on returned or refused merchandise. Items listed on this invoice remain the property of J&G Sales Ltd until paid for. If merchandise is damaged in shipment you must notify the carrier at time of delivery so a claim can be filed. Do not return damaged merchandise to us, call first. All firearms and ammunition buyers should receive proper instruction on how to use their purchase before using the products. All used firearms should be certified safe by a licensed gunsmith before firing. We're not responsible for typographical errors. All prices are net cash & subject to change without notice. By accepting these goods you confirm they are not for export outside the USA.

Exhibit 102

MAHLER_0000030

BUDK 2/22/19

Free SHIP         BKSHIP212

✓ United Cutlery Black Ronin Assisted Knife — 12.93  2 for 1
✓ Assist Firefighter Set  19AES69  — 9.99§
1 M&P Armour Firefighter Assist Knife — 2 for 1
  19KR490F                              9.99§
✓ United Cutlery Stout Claw Axe — 19.99§
  06 UC2528                           2 for 1
✓ United Cutlery 3 piece Throwing Set   12.99§
  47-UC1408F
✓ Timber Rattler Western Bowie — 18"   2x
  17-TR15                               9.99§
✓ Black Legion Throw  17BV172         —9.99§
                                      $116.90

TimeZone
888-928-2485   Usher
W.7L send new contract to Brandon

                    928=
                    445 = 9650    IT6      Mile 5
                    .45ACP   319.28/1m ×3@300 =  $900 =
                    -40 S&W           (5-1752c)   954.70
                                                  4,876.80
                    9mm                           320.44
                                                  5247.24

                    7.62×39 (HP) $209.89/1m  ×4= 1039.60 (5-1732c)
                    .223         $269.80/1m  ×6  $2240.80 (5-1798c)
                                              $2249.60    5247.24
                    7.62×51(308) $460.00/1m wood  228 = 599.9?
                    5.45×39      $289.98+1,030 Red tracer (5-1298b)
                    5.45×39      $157 = 1000 russ surplus (5-1326b)
                    7.62×54       20430/1000 = 20430
                                             $M= 20450

                                 CTD             TL (5-1784)

8-TA-462300
           9mm
           .45ACP  $300/m  Tul Ammo
           .45 S&W $317.80/m  Arsenal
Ammo
SAIL       7.62×39 $21.49/m  Tul Ammo
           .223    $35ea/m
           7.62×51(308) $42.95/m  Anderson
           5.45×39       ($29.50/m Anderson + 200=1.
           7.62×54       247.50/m Red Army
                         215.78/m

Bobcat 6×C's

## CERTIFICATE OF SERVICE

I hereby certify that I have served a certified true copy of the **DEFENDANT'S MOTION IN LIMINE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE** in the attached matter upon the parties listed below by notice of electronic filing using the CM/ECF System as follows:

**Gregory R. Nyhus**
U.S. Attorney's Office
District of Oregon
1000 S.W. Third Avenue
Suite 600
Portland, OR 97204
503-727-1118
Fax: 503-727-1117

and filed the original with the Court on the date listed below.

DATED this 7 day of December, 2017.

**WARREN & SUGARMAN**

/s/Ernest Warren, Jr.
**Ernest Warren, Jr. OSB No. 891384**
Attorney for Defendant