BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**GREGORY R. NYHUS, OSB #913841**
Assistant United States Attorney
Greg.R.Nyhus@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:16-cr-00105-001-AA |
| v. | |
| **ROBERT EVANS MAHLER,** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **Defendant.** | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, through Gregory R. Nyhus, Assistant United States Attorney (AUSA) for the District of Oregon, provides the following memorandum for sentencing in the above-entitled matter.

I.   **CONVICTION**

A.   Crime of Conviction

Following a day and a half of trial, on September 18, 2018, the defendant pled guilty to Count 1 of a single-count Superseding Indictment.  Count 1 charged Felon in Possession of a

**Government's Sentencing Memorandum**                                                                              **Page 1**

Firearm, and alleged that on or about or between January 19, 2016, and February 16, 2016, in the District of Oregon, the defendant, Robert Evans Mahler, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess multiple firearms, as identified in the Superseding Indictment, all of which had previously been transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). The Superseding Indictment to which defendant pleaded guilty to specified 18 firearms.

The maximum sentence for a violation of Title 18, United States Code, Section 922(g)(1) is 10 years' imprisonment, a fine of up to $250,000, three years of supervised release and a $100 fee assessment. Defendant has agreed to pay the $100 fee assessment by the time of entry of guilty plea or explain to the Court why this cannot be done.

  B.  Plea Agreement

Defendant entered his plea without benefit of a plea agreement.

  C.  Offense Conduct

The government has reviewed the facts presented in the Pre-Sentence Report (PSR) and urges the Court to utilize them as the basis for sentencing defendant. The facts were presented by the government at trial in this matter.

  1.  Defendant stored firearms at the Daggett's.

The Daggett's lived in a house near Molalla, Oregon. They knew the defendant as a customer, from around town, and as a distant relative. Around 2013 or early 2014 defendant asked them if he could temporarily park a few trucks on their property because they had a lot of space. Not long after, defendant then asked the Daggett's if he could also park a trailer and store some supplies on their property, to which they agreed.

Sometime in early 2014, defendant asked if he could also store firearms at their house. Defendant told him that he could not store the supplies and firearms at his own house because defendant claimed that his wife did not want the firearms there. Bill Daggett helped defendant move three locking containers into garage: a large Liberty brand safe, a large Knaack brand toolbox, and a smaller foot-locker storage box. All three storage containers locked with either a key, or a key and combination lock. After the boxes were in place, Bill helped defendant bring the firearms and ammunition into the garage to place in the locking storage containers. Although defendant offered to pay a small rental fee to store all defendant's property, no payments were ever exchanged.

By 2015, defendant's stored materials were really starting to pile up, and defendant had multiple trucks on their property. Although the Daggett's repeatedly asked defendant to retrieve his possessions, defendant always had some excuse not to do so.

Sometime in late 2015, while Connie was editing a manuscript for defendant, she discovered some information that led her to believe defendant was a convicted felon. Because of her concern regarding returning the firearms to defendant, Connie contacted law enforcement on January 19, 2016.

On January 22, 2016, after gathering some background information about defendant, including the fact that he had two prior felony convictions for federal firearm-related offenses in 1994 and 1995, Special Agent Johnson at the Bureau of Alcohol, Tobacco, and Firearms (ATF) met with the Daggett's. During the meeting, she learned that defendant, reportedly, had previously been storing his safe and firearms at another couples' residence, but their house was subject to foreclosure, so he needed to move his belongings to the Daggett's house. Bill confirmed that he helped defendant move numerous firearms into the lockboxes, and although he

did not count, he estimated defendant had approximately 12-20 "long guns," some "AR-style," and numerous hand guns.

SA Johnson also learned about a pallet of ammunition, approximately 19,000 rounds, that defendant had shipped to their business in March, 2014. Apparently, defendant asked Bill if he could pick up a cashier's check and mail it to an ammunition distributor. Defendant gave Bill approximately $5000 cash, and Bill picked up the cashier's check and mailed it to the address for J&G Sales that defendant had provided to him. After the ammunition arrived at Bill's business, he and defendant moved the ammunition into defendant's lockboxes in Bill's garage.

2.      Search Warrants.

On February 3, 2016, law enforcement executed three search warrants on the defendant's three lockboxes in the Daggett's garage. Law enforcement seized 34 firearms, approximately 32,000 rounds of ammunition, and numerous magazines, some of which were high capacity magazines. Some of the boxes of ammunition were marked with the initials "RM." Eleven of the 18 firearms charged in this case were seized from defendant's three lockboxes (Count 1, Nos. 1-10 and No. 18).

On February 16, 2016, law enforcement executed search warrants on defendant's residence, his car and his person. Defendant's Kia Sorrento was brought to the Silverton Police Department where it was searched. Inside, officers located a gun bag that contained one loaded .45 caliber Glock 21 pistol model 2, six magazines (four loaded), and some loose ammunition. The glock seized from the car is identified in Count 1, No. 11 of the superseding indictment.

At defendant's residence, agents learned that defendant and his wife had separate bedroom areas, and that defendant's bedroom and office areas was locked. When defendant arrived at the residence with law enforcement, he told agents where the keys were to his locked

doors that led to his bedroom and office. The agents searched defendant's bedroom and seized six (6) firearms (Count 1, Nos. 12-17), numerous magazines and approximately 2000 rounds of ammunition.

One of the firearms, a loaded .45 caliber Kimber pistol, was found underneath the pillow on defendant's bed. Another firearm, the .45 ACP Armscor of the Phillipines Charles Daly pistol, was found near the defendant's bed.[1]

Law enforcement also found pieces of paper with the combination to the Liberty safe in defendant's car, his residence, and inside defendant's wallet that he had on his person. Agents also found keys in defendant's bedroom that fit inside and turned the locks of each of the three lockboxes in the Daggett's garage.

    3.        Auto Ordnance 1911 .45 Caliber Pistol Purchase.

During March 2016, ATF agents met with Curtis Allen, Jr. who told them that Mahler had been to his property several years ago, and that defendant brought his own firearm. He also stated that he sold an Auto Ordnance 1911 .45 caliber pistol to defendant a few years before. Although he did not remember the exact date, he kept a copy of an informal bill of sale that defendant had typed up and given to him. Mr. Allen said defendant did not put his own name on the bill of sale, but put the name "Alex Mahler" on the document and said he was buying the gun for his brother (Alexander Mahler is the name of defendant's brother who lives in Arkansas.) ATF was able to determine that the gun Mr. Allen sold to defendant was the Auto Ordnance

---

[1] Although not presented at trial, the ATF was able to determine that this firearm had previously been located in a hotel room registered to defendant during a stay in 2009. The firearm had been transferred from the Los Angeles Police Department to the Silverton Police Department. Silverton Police searched for but could not find any paperwork associated with the firearm's receipt or release to defendant.

1911 .45 caliber pistol seized from defendant's locked toolbox during the search warrant at the Daggett's garage.

In total, 41 firearms were seized by agents from the ATF.

## II.     GUIDELINES APPLICATION

### A.     Standards

The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. §3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). They serve as "the starting point and the initial benchmark" in every sentencing proceeding, *Gall v. United States*, 552 U.S. 38, 49 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestar" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*,133 S.Ct. 2072, 283-84 (2013),. While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

The remaining statutory factors include the defendant's history and characteristics, the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. §§3553(a)(1)-(2). They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(7). *See also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).

In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008), the Ninth Circuit, sitting *en banc*, summarized the procedures a sentencing court must follow. The court must first correctly determine the applicable guideline range. *Id.* at 991. The court must also allow the parties to "argue for a sentence they believe is appropriate," and must "consider the §3553(a) factors to decide if they support the sentence suggested by the parties." *Id.* The court may not presume the guidelines are reasonable, and should not give them any more or any less weight than any other factor. *Id.* The court "must make an individualized determination based on the facts," and must explain its choice of sentence "sufficiently to permit meaningful appellate review." *Id*. at 991-92.

      B.      Advisory Guideline Calculation

      1.      Base Offense Level

Pursuant to USSG §2K2.1(a)(4)(B), the base offense level is 20 because the offense involved at least one semi-automatic firearm that is capable of accepting a large capacity magazine and the defendant was a prohibited person at the time the defendant committed the instant offense. Evidence adduced from testimony during trial on the matter clearly established that defendant owned or possessed several high capacity magazines. Specifically, defendant possessed a black nylon gun case containing a Rifle, Surplus Ammo and Arms, model LOW 15, multi-caliber, serial number SA05062. ATF Agents also located two magazines containing 50 rounds (25 rounds each) of .223 caliber ammunition in the pockets on the nylon gun case.

      2.      Number of Firearms

Pursuant to USSG §2K2.1(b)(1)(C), because the offense involved between 25 and 99 firearms, defendant's offense level should be increased by 6 levels. A total of 41 firearms were seized during the investigation. Contrary to uncontroverted and compelling evidence to the

contrary, defendant eschews his accountability for the additional firearms, claiming that they belong to the Daggett's –including the firearms found in his locked living quarters in his residence.

Regardless of defendant's admission – or ownership of the additional weapons – U.S.S.G. § 1B1.3(a)(1) instructs that defendant shall be held responsible for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant. Defendant clearly possessed the firearms. A person has possession of an object if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it. Ninth Circuit Model Jury Instruction 3.17; *see also United States v. Cain*, 130 F.3d 381, 382-84 (9th Cir. 1997) (approving similar language for defining possession). Possession is distinguishable from ownership. *See United States v. Casterline*, 103 F.3d 76, 79 (9th Cir. 1996) (distinguishing ownership from dominion and control). Defendant should therefore be held accountable for each of the 41 firearms attributable to him and his offense level increased six levels.

3. Obstruction of Justice

Pursuant to U.S.S.G. §3C1.1, if " (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and the conduct related to the defendant's offense of conviction" then defendant's offense level should be increased by 2 levels. Application Note 4(c) to U.S.S.G. §3C1.1 specifically addresses producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding.

In a misguided effort to avoid prosecution on the instant charges, defendant filed two motions to dismiss, alleging outrageous government conduct and a warrantless search, both pertaining to defendant's residence (ECF No.'s 93, 95). In support of his motions, defendant proffered still images ostensibly from a game camera that was motion activated.

Following a forensic review of the camera and the data storage media consisting of two separate SD cards, this court concluded that the images offered by defendant were not credible and contained:

> … visual irregularities, evidence of manipulation by photo editing software nearly two years after the photo was allegedly taken, multiple downloads of images, different hash values in apparently identical images, the fact that the photos appear on both SD cards, missing images from the sequence, time gaps, the position shift in the camera between series of images, and the fact that the time and date on each image is entirely user-dependent.

(ECF No. 116, at 7-8). In addition, several visually identical images appear on the two separate SD cards – an impossibility without human intervention since the camera can record on only one – and both have different hash values or digital fingerprints – again an impossibility without human intervention. Given that defendant purported to be owner and sole operator of the camera, and the proponent of the images, it is clear that defendant used them to manipulate the proceedings in a misguided attempt to avoid the charges against him. Defendant's offense level should be increased an additional two levels.

4.     Total Offense Level and Criminal History

Given the foregoing, defendant's total offense level should be the sum of the base offense level of 20, to which 6 levels should be added for the number of firearms in defendant's possession, and a two-level enhancement for defendant's obstructive conduct yields a total offense level of 28. As noted below, the government does not support a one-level reduction for

acceptance of responsibility and does not believe he is entitled to the remaining two levels assigned to the court's discretion.

The government agrees that defendant's criminal history category is I, comprising of one point.

## III. DEPARTURES AND ADJUSTMENTS

### A. Acceptance of Responsibility

As explained in Application Note 3 to U.S.S.G. § 3C1.1, entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, will constitute significant evidence of acceptance of responsibility. This evidence, however, may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right. *United States v. Piper*, 918 F.2d 839, 841 (9th Cir. 1990). Here, not only did defendant essentially precipitated a trial, put the government to its proof, but engaged in a course of conduct pretrial designed to avoid and invalidate the prosecution of his conduct.

Defendant's sentencing materials also demonstrate defendant's failure to take responsibility for his criminal conduct. Defendant now claims that the collection of firearms located in his bedroom (one under his pillow, one under his bed and several in his closet), and those stored with the Daggett's, do not belong to him and that he never possessed them. Notwithstanding the extent to which he took advantage of the Daggett's generosity and friendship and the manner in which he manipulated them into receiving ammunition shipments on his behalf, and defendant ignores asking Curtis Allen to fabricate a receipt for the illegal sale of a pistol, all in an effort to avoid detection and prosecution for his illegal conduct.

Moreover, evidence adduced at the government's presentation of testimony clearly established that not only did defendant own the firearms in question, but that he constructively possessed them. Defendant's trial Exhibit 100, a collection of messages between Mrs. Daggett and defendant ending in late January 2016 (on the eve of the investigation), establish that defendant stored his materials in the Daggett's garage and that he made plans to retrieve them following a breakdown in their friendship. Defendant claimed the items in the garage, which included storage containers for which he possessed keys, constitute constructive possession of the firearms located at the Daggett's residence. As noted above, defendant's refusal to be held accountable for the remaining 40 firearms demonstrates defendant's lack of acceptance of his responsibility. This court should therefore withhold the additional two levels he would otherwise be entitled to.

B.   Additional Adjustments

The government does not believe that there are sufficient grounds on which to reduce defendant's offense level downward. Defendant's obstreperous conduct, his willingness to mislead the court and government about the nature and quality of evidence used by him to avoid criminal charges together with his overt manipulation of others, militates against any reductions.

Defendant's aggressively manipulative conduct is not unique to this case alone. As presented earlier, perhaps most disturbing is the fact that defendant has engaged in passport fraud during his prior flight from prosecution – for almost two years in an attempt to flee before. On May 13, 1992, following a lengthy investigation by federal authorities, defendant was indicted on several federal crimes related to improperly exporting guns to South Africa and an arrest warrant was issued. When defendant was finally apprehended, the government learned that his United States Passport had expired and he had been traveling and returned to the United

States on a fraudulent South African passport. According to the investigative report, provided in discovery to defendant, and attached and incorporated as Exhibit A, defendant knew of the warrant for his arrest. Note that the report indicates defendant threatened the ATF agent involved.

## V. CONCLUSION

This court should find defendant's total offense level to be 28, and defendant's criminal history category I, yielding an advisory guideline range of 78-97. The government believes that the appropriate sentence is the low end, or 78 months.

Dated: February 6, 2019

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*/s/ Gregory R. Nyhus*
GREGORY R. NYHUS, OSB 91384
Assistant United States Attorney